## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHANIE SUTTER**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>**UPMC, UPMC PRESBYTERIAN SHADYSIDE, AND DOES 1-10**,<br><br>Defendants. | Case No.:<br><br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

COMES NOW Plaintiff, Stephanie Sutter, by and through her undersigned counsel, and hereby brings this Collective and Class Action Complaint against Defendants UPMC, UPMC Presbyterian Shadyside, and Does 1-10, and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Scheduling Specialist Associate, Contact Center Specialist, Consumer Service Concierge, and Pre-Arrival Representative (collectively "Call Center Representative" or "CCR") employees of Defendants to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.*

2.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendants' call center, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes

starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3.      Defendants subjected Plaintiff, and those similarly situated, to Defendants' policy and practice of failing to compensate their call center employees for their necessary boot-up and call ready work, which resulted in the failure to properly compensate them as required under applicable federal and Pennsylvania state laws.

4.      Plaintiff seeks a declaration that her rights, the rights of the FLSA Collective, and the rights of the Pennsylvania Classes were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative Collective and Classes may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq.*

6.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8.      Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9.      Defendants' employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has personal jurisdiction over Defendants because they are domiciled and maintain offices in the State of Pennsylvania.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside within this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **PARTIES**

12.     Plaintiff is an individual who resides in Allegheny County, Pittsburgh, Pennsylvania. Plaintiff worked for Defendants as a Call Center Representative from March 2018 to July 2022. Plaintiff executed her Consent to Sue form, attached hereto as Exhibit B.

13.     Defendant UPMC is a Pennsylvania nonprofit corporation with its principal place of business in Pittsburgh, Pennsylvania.

14.     Defendant UPMC Presbyterian Shadyside is a Pennsylvania nonprofit corporation with its principal place of business in Pittsburgh, Pennsylvania.

15.     Defendant Does 1-10 are Pennsylvania entities either owned, controlled, or managed by Defendant UPMC.

16.     Defendants collectively make-up the University of Pittsburgh Medical Center health care system ("UPMC System").

17.     Defendants describe themselves as a "world-renowned health care provider and insurer." Defendants operate 40 hospitals and more than 700 doctors' offices and outpatient centers. *See UPMC: Committed to Life Changing Medicine*, UPMC, https://www.upmc.com/ (last visited March 22, 2024).

18.     Defendants operate physical call centers at 2 Hot Metal Street, Pittsburgh, PA and at their East Bayfront location in Erie, PA. Defendants also employ remote call center employees in Pennsylvania. *See* Job Postings, attached hereto as Exhibit C.

19.     Defendant UPMC may accept service at 200 Lothrop Street, Pittsburgh, PA 15213.

20.     Defendant UPMC Presbyterian Shadyside may accept service at DeSoto at O'Hara Streets, Pittsburgh, PA 15213.

### JOINT EMPLOYER

21.     Defendants jointly employed Plaintiff and CCRs as defined in the FLSA. *See* 29 C.F.R. § 791.2.

22.     Defendants engaged in a joint venture, partnership, and common enterprise, and at all relevant times, acted within the course and scope of, and in pursuit of said joint venture, partnership, or common enterprise in employing CCRs to perform work for Defendants' benefit.

23.     Defendants jointly possessed the ability to hire and fire CCRs.

24.     Defendants jointly had the authority to set and/or communicate conditions of employment for CCRs, including the compensation and work hours of CCRs.

25.     Defendants jointly maintained employment records for CCRs.

26.     Defendants' joint venture, partnership, and common enterprise included employing CCRs for the purpose of scheduling appointments for patients, providing directions

and required preparation for appointments, handling billing inquiries, handling insurance claim inquiries, and resolving other patient issues.

27.     Upon information and belief, Defendant UPMC is the parent company of Defendant UPMC Presbyterian Shadyside and Does 1-10 and utilizes its subsidiaries to process payroll for CCRs.

28.     For example, Defendant UPMC Presbyterian Shadyside paid Plaintiff. *See* W2, attached hereto as Exhibit D.

29.     Plaintiff never worked at UPMC Presbyterian Shadyside. Whenever she needed to report to a physical office, she reported to Defendants' physical call center located at 2 Hot Metal Street, Pittsburgh, PA.

30.     The scheduling services provided by Plaintiff were not limited to patients at UPMC Presbyterian Shadyside. Plaintiff answered inbound calls and assisted patients across the UPMC System.

31.     Defendants assign CCRs to Defendant UPMC Presbyterian Shadyside or Does 1-10 for payroll processing but Defendants jointly set the terms and conditions of employment for CCRs and CCRs work for the benefit of Defendants' joint venture, partnership, and common enterprise.

## **GENERAL ALLEGATIONS**

32.     Defendants employed Plaintiff as an hourly Call Center Representative ("CCR"). Defendants assign CCRs, like Plaintiff, to answer customer calls from Defendant's patients.

33.     Plaintiff's primary job duties included answering calls from UPMC System patients and providing scheduling services. More specifically, this included speaking to patients regarding doctor appointment scheduling, directions to the appointment, any preparation needed

before the appointment, insurance information, billing questions, and helping to resolve any other patient issues.

34.     Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked at least 40 hours per workweek.

35.     Regardless of whether Defendants scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of her job duties as a CCR. Defendants never compensated Plaintiff for this necessary time worked off-the-clock.

36.     29 C.F.R. § 553.221 provides:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

37.     29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A.     *Unpaid Boot-Up and Call Ready Work.*

38.     Defendants tasked Plaintiff with providing scheduling service to Defendants' patients by use of Defendants' telephones, Defendants' computers, and the programs accessible from Defendants' computers.

39.     To access Defendants' systems, Plaintiff, and all other current and/or former CCRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications.  Once this boot-up and call ready work is

completed, Plaintiff, and all other current and/or former CCRs, must log in to or prepare Defendants' phone system to take their first call at their scheduled shift start time.

40.     In addition to completing the process described above, CCRs who worked remotely had to log in to Defendants' virtual private network (VPN).

41.     Defendants do not compensate Plaintiff, and all other current and/or former CCRs, until they are ready to take incoming calls.

42.     The boot-up and call ready work regularly takes up to 10 minutes per shift, or more if technical issues arise. Defendant did not compensate Plaintiff and CCRs for this time.

43.     Regardless of how long the boot-up and call ready work takes, Defendants did not compensate Plaintiff for this time.

44.     Regardless of how long the boot-up and call ready work takes, Defendants did not allow Plaintiff, and all other current and/or former CCRs, to clock in before their scheduled shift start time.

45.     The boot-up and call ready work Plaintiff, and all other current and/or former physical call center CCRs, must complete before they begin being compensated is the same.

46.     The boot-up and call ready work Plaintiff, and all other current and/or former remote call center CCRs, must complete before they begin being compensated is the same regardless of where they worked remotely.

47.     The boot-up and call ready work is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendants' business.

48.     Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CCRs, directly benefits Defendants.

**B.**   ***Defendants' Policy and Practice of Off-the-Clock Work Violates Federal and Pennsylvania State Law.***

49.   At all times relevant, Defendants suffered or permitted Plaintiff, and all other current and/or former CCRs, to routinely perform off-the-clock boot-up and call ready work by not compensating CCRs until after they completed the boot-up and call ready procedure.

50.   Defendants knew or should have known that they must pay their employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

51.   Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CCRs, for their compensable boot-up and call ready work performed in any amount.

52.   Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendants to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

53.   Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CCRs, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

54.   For example, upon information and belief, during the workweek of June 6, 2022 to June 10, 2022, Defendants paid Plaintiff for over 40 hours of work. However, the hours Defendants paid Plaintiff did not include the boot-up and call ready work as alleged herein. Had Defendants properly paid Plaintiff for all hours worked during this pay period, then it would

have paid her additional overtime wages equal to the uncompensated boot-up and call ready work.

55.     Defendants are aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendants' own payroll records reflect the number of hours they paid Plaintiff.

56.     Defendants are aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendants' own payroll records reflect the hourly rate it paid Plaintiff. For example, upon information and belief, Plaintiff's hourly rate for the exemplar week noted above was approximately $18.00 per hour.

57.     Defendants knew or should have known that Pennsylvania wage and hour laws require an employer to pay employees wages for all hours worked. *See* 43 P.S. § 333.104.

58.     Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former hourly CCRs working in Defendants' physical call center or remotely in Pennsylvania for their compensable boot-up and call ready work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper legal rates, including overtime premiums.

59.     In reckless disregard of the FLSA and Pennsylvania wage and hour laws, Defendants adopted and then adhered to their policy, plan, or practice of employing Plaintiff, and all other current and/or former CCRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former CCRs, in violation of the FLSA and Pennsylvania wage and hour laws.

**C.     *Recordkeeping.***

60. The Pennsylvania wage and hour laws state that every employer "shall keep a true and accurate record of the hours worked by each employe and the wages paid to each" *See* 43 P.S. § 333.108.

61. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

62. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

63. Upon information and belief, Defendants failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Pennsylvania wage and hour laws because they failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CCRs' payroll records.

64. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

65. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as

required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Call Center Representative employees, and/or other job titles performing the same or similar job duties, who worked for UPMC, UPMC Presbyterian Shadyside, and Does 1-10 at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

67.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

68.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendants' practices, policies, or plan of not paying their CCR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative

---

[1] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

69.     Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records; and from input received from members of the FLSA Collective as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

70.     Plaintiff shares the same interests as members of the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## THE PENNSYLVANIA WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of putative Classes defined to include:

**PMWA Class**

*All current and former Call Center Representative employees, and/or other job titles performing the same or similar job duties, who worked for UPMC, UPMC Presbyterian Shadyside, and Does 1-10 at any time in the last three years.*

**PWPCL Class**

*All current and former Call Center Representative employees, and/or other job titles performing the same or similar job duties, who worked for UPMC, UPMC Presbyterian Shadyside, and Does 1-10 at any time in the last three years.*

(hereinafter referred to collectively as the "Pennsylvania Classes"). Plaintiff reserves the right to amend these definitions as necessary.[2]

72.     *Numerosity:* The members of the Classes are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. The precise number of members of the Classes should be readily available from a review of Defendants' personnel and payroll records.

73.     *Commonality/Predominance:* There is a well-defined community of interest among members of the Classes and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a.     Whether Defendants violated 43 P.S. § 333.104 by failing to pay current and former employees for all hours worked;

   b.     Whether Defendants violated 43 P.S. § 260.3 by failing to pay current and former employees for all wages earned;

   c.     The proper measure of damages sustained by the proposed Class; and

   d.     Whether Defendants violated 43 P.S. § 333.108 by failing to make, keep, and preserve true and accurate payroll records.

74.     *Typicality:* Plaintiff's claims are typical of those of the Classes in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other claims of members of the Classes and Plaintiff's legal theories are based on the same legal theories as all other members of the Classes:

---

[2] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

whether class members were employed by Defendants on an hourly basis without receiving compensation for all hours worked.

75.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the Classes and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Classes.

76.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for members of the Classes to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of members of the Classes, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the claims of the putative Classes, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

77.    The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)

("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,
U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
(FLSA Collective)**

78.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

79.     At all times relevant to this action, Defendants were an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

80.     Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

81.     At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

82.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

83.     The positions of Scheduling Specialist Associate, Contact Center Specialist, Consumer Service Concierge, Pre-Arrival Representative, and Call Center Representative are not exempt from the FLSA.

84.     Defendants' other job titles performing similar Call Center Representative job duties are not exempt from the FLSA.

85.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

15

86.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

87.     Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

88.     Upon information and belief, Defendants have corporate policies of evading overtime pay for their hourly workers.

89.     Defendants' violations of the FLSA were knowing and willful.

90.     By failing to compensate their hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CCRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to CCRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendants in the same or similar position as Plaintiff.

91.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Collective.

92.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

**COUNT II**

16

## VIOLATIONS OF THE PENNSYLVANIA MINIMUM WAGE ACT ("PMWA")
### (PMWA Class)

93.     Plaintiff, individually and on behalf of the PMWA Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

94.     Plaintiff and members of the PMWA Class are current and former employees of Defendants within the meaning of 43 P.S. § 333.103.

95.     Defendants at all relevant times were an employer within the meaning of 43 P.S. § 333.103.

96.     Defendants were required to pay Plaintiff and the PMWA Class for all hours worked.

97.     43 P.S. § 333.104(a) requires every employer to pay their employees wages for all hours worked.

98.     Wages are defined as "compensation due to any employe by reason of his or her employment" 43 P.S. § 333.103(d).

99.     43 P.S. § 333.104(c) states that "Employes shall be paid for overtime not less than one and one-half times the employe's regular rate."

100.    Defendants, pursuant to their policies and illegal timekeeping practices, refused and failed to pay Plaintiff and the PMWA Class for all hours worked.

101.    By failing to properly compensate Plaintiff and the PMWA Class for all hours worked, Defendants violated, and continue to violate their CCRs' statutory rights under 43 P.S. § 333.104.

102.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the PMWA Class have suffered damages in an amount to be determined at trial.

103.    Plaintiff and the PMWA Class seek damages in the amount of their unpaid straight-time and overtime wages for all hours worked, costs for this action, pre- and post-judgment interest, attorneys' fees, and such other legal and equitable relief as the Court deems proper.

## COUNT III

### VIOLATIONS OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW ("PWPCL")
### (PWPCL Class)

104.    Plaintiff, individually and on behalf of the PWPCL Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

105.    Defendants at all relevant times were an employer within the meaning of 43 P.S. § 260.2a.

106.    The PWPCL requires an employer to pay all wages due to employees on regular paydays. *See* 43 P.S. § 260.3.

107.    The PWPCL provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages.

108.    Defendants breached the PWPCL and their contractual obligations to Plaintiff and the PWPCL Class by failing to pay Plaintiff and the PWPCL Class for necessary boot-up and call ready work.

109.    Plaintiff and the PWPCL Class were hired at various times. Defendants offered to pay Plaintiff and the PWPCL Class certain rates per hour for each hour worked as a CCR. Each Class members' contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

110. Plaintiff and the PWPCL Class accepted the offer and worked for Defendants as CCRs, and/or other job titles performing the same or similar job duties.

111. Plaintiff and the PWPCL Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

112. Plaintiff's duties, and the duties of the PWPCL Class, required boot-up and call ready work.

113. Plaintiff and every PWPCL Class member performed under their contract by doing their jobs in addition to carrying out the off-the-clock duties Defendants required.

114. Defendants do not compensate their CCRs, and/or other job titles performing the same or similar job duties, until after the boot-up and call ready procedure is complete.

115. Despite being required to complete these integral boot-up and call ready duties, Plaintiff and the PWPCL Class were not compensated at their hourly rate for their work.

116. By failing to pay Plaintiff and the PWPCL Class for the boot-up and call ready work, Defendants breached their contract with Plaintiff and the PWPCL Class to pay their hourly rate for each hour worked.

117. Defendants breached their duty to keep accurate records and to keep track of the time Plaintiff and PWPCL Class members spent performing boot-up and call ready work, which is a fundamental part of an employer's job.

118. In sum, the facts set forth above establish the following elements and terms of the contract:

    a.    Offer: a set hourly rate for each hour worked as a CCR;

    b.    Acceptance: Plaintiff and the PWPCL Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendants);

      c.      Breach: Defendants did not pay Plaintiff and the PWPCL Class for each hour (or part thereof) worked; and

      d.      Damages: Defendant damaged Plaintiff and the PWPCL Class in an amount to be determined at trial by failing to pay Plaintiff and the PWPCL Class their hourly rate for each hour worked.

119.    As a direct and proximate cause of Defendant's breach, Plaintiff and the PWPCL Class were damaged in an amount to be proven at trial.

120.    Plaintiff and the PWPCL Class seek damages in the amount of their unpaid straight-time and overtime for all hours worked, liquidated damages in amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater, costs for this action, pre- and post- judgment interest, attorneys' fees, and such other legal and equitable relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

      a.      An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above;

      b.      An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

      c.      An Order certifying the Pennsylvania Classes pursuant to Fed. R. Civ. P. 23;

      d.      An Order designating Plaintiff to act as the Class Representative on behalf of the FLSA Collective and the Pennsylvania Classes;

e.     An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

f.     An Order declaring that Defendants violated their obligations under the FLSA;

g.     An Order declaring that Defendants violated Pennsylvania's Minimum Wage Act and Wage Payment and Collection Law and their attendant regulations as set forth above;

h.     An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week;

i.     An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid straight-time wages calculated at Plaintiff's regular rate of pay;

j.     An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

k.     An Order awarding liquidated damages to Plaintiff and the PWPCL Class in amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater found owing to Plaintiff and the PWPCL Class under the PWPCL;

l.     An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

m.     An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.     An Order awarding such further relief as this court deems appropriate.

## **JURY DEMAND**

NOW COMES Plaintiff, by and through her undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: April 5, 2024                                        Respectfully submitted,

*/s/ Ken Grunfeld*
Ken Grunfeld (PA Bar No. 84121)

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
65 Overhill Road
Bala Cynwyd, PA 19004
T: 954-525-4100
E: grunfeld@kolawyers.com

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

*\*Pro Hac Vice Forthcoming*